IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES MILES, | * |
| Plaintiff, | * |
| | *     Civil No. TJS-22-2698 |
| v. | * |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | * |
| | * |
| Defendant. | |

\*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Pending before the Court is Defendant Allstate Vehicle and Property Insurance Company's ("Allstate") Motion for Summary Judgment ("Motion") (ECF No. 48). Having considered the parties' submissions (ECF Nos. 48, 53 & 54), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted.

**I.      Introduction**

    **A.      Factual Background**

The following facts are not in dispute. To the extent that any facts are in dispute, they are viewed in the light most favorable to Plaintiff, the non-moving party.

Plaintiff James Miles filed his Complaint against Allstate on October 19, 2022. ECF No. 1. In the Complaint, he alleges that his residence ("Property") was insured under a homeowner's insurance policy ("Policy") issued by Allstate. *Id*. at 2. The Policy promised to indemnify Plaintiff for covered losses to the Property, and to return the Property to its pre-loss condition (subject to policy limits). *Id.* Plaintiff's Property was covered by the Policy at all relevant times. *Id.*

In February 2020, a storm caused damage to the Property, including damage to its roof. *Id.* Plaintiff filed a claim under the Policy. In March 2020, Allstate inspected the Property and

determined that the storm had caused damage to six shingles on the Property's roof, along with damage to a detached shed and a vinyl fence. *See* ECF No. 48-1 at 1. Allstate estimated that Plaintiff's Property incurred $2,588.85 in damage as a result of the storm, and paid Plaintiff $1,588,85 (the estimated repair cost minus the Policy deductible of $1,000) for the damage. *Id.* at 1-2.

Thereafter, Plaintiff submitted information to Allstate that the damaged roof shingles were no longer manufactured in the same size. ECF No. 1 at 2. This meant that the new roof shingles would have to be "cut down to spot repair the six wind damaged shingles Allstate paid to replace." *Id.* Plaintiff hired Semper Fi Public Adjusters LLC ("Semper Fi") to evaluate his claim for damages under the Policy. *Id.* at 2. Semper Fi inspected the Property and estimated that Plaintiff was entitled to $76,894.11 in damages. *Id.* at 3. This estimate was based on the assumption that Property's entire roof required replacement because the damaged shingles were no longer manufactured in the same size as the original, undamaged shingles. *Id.* Semper Fi communicated to Allstate Plaintiff's demand for damages in the amount of $76,894.11 in March and April 2021. *Id.*

On August 30, 2021, Allstate wrote to Plaintiff that it would pay the $20,000 policy limits under the Siding and Roofing Replacement Endorsement coverage that Plaintiff had purchased. ECF No. 48-10. It is unclear whether Plaintiff responded to this letter. On February 2, 2022, Allstate sent the $20,000 payment to Plaintiff's counsel, "which represented the limit of coverage under the Siding and Roofing Replacement Endorsement ('SRR Endorsement') (additional optional coverage purchased by the Plaintiff)." ECF No. 48-11. Allstate states that Plaintiff or his representatives cashed the $20,000 check on or about February 22, 2022. ECF No. 48-1 at 10.

Under the Policy, Allstate is not required to replace undamaged roofing due to the unavailability of the original materials. *See* ECF No. 48-2 at 24, 36 (explaining that payment "will

2

not include any increased cost due to mismatch of . . . roofing resulting from the unavailability of your original materials") (emphasis omitted). With the SRR Endorsement that Plaintiff purchased, however, coverage was added to the Policy to pay for undamaged roofing materials if the original roofing material is no longer available, up to the limit of liability listed in the declarations page of the Policy. ECF No. 48-3 at 3. The SRR Endorsement provides:

> We will reimburse you for the additional cost that you incur to replace mismatched, undamaged . . . composition shingle roofing material of building structures on the residence premises [covered under the Policy] with materials of like kind and quality that are substantially similar to materials that were damages as a result of a covered loss [under the Policy].
>
> \*   \*   \*
>
> For purposes of this Endorsement, a mismatch of . . . composition shingle roofing materials occurs when the same . . . composition shingle roofing materials is no longer available for the damaged portion of the covered building structure.
>
> \*   \*   \*
>
> The limit of liability for [the SRR Endorsement] is shown on your Policy Declarations. This is the total amount for any one loss available under [the SRR Endorsement]. Once this limit of liability for [the SRR Endorsement] is exhausted, no further amounts will be available.

ECF No. 48-2 at 8 (emphasis omitted).

The Policy Declarations shows a limit of liability in the amount of $20,000 for the SRR Endorsement. ECF No. 48-2 at 5.

Plaintiff filed a complaint against Allstate with the Maryland Insurance Administration but was denied relief. ECF No. 1 at 3. This lawsuit followed.

Count I is for breach of contract. *Id.* Plaintiff claims that Allstate was required to pay adequate compensation for his losses under the Policy, and that it has refused to do so. *Id.* at 3-4. In Count II, Plaintiff claims that Allstate failed to settle his claims in good faith, as required by Md. Code, Cts. & Jud. Proc. § 3-1701. *Id.* at 4-5. He alleges that Allstate did not consider pertinent

3

evidence when it rejected the claim that Semper Fi made on his behalf, and that Allstate "made false representations in substantiation of positions made arbitrarily and capriciously." *Id.*

After the pleadings were filed, the case proceeded to discovery. ECF No. 16. Several months after discovery closed, Plaintiff filed a "Motion to Compel Arbitration and Stay Count II of Plaintiff's Complaint" (ECF No. 40), on which the Court has deferred ruling. Allstate's Motion (ECF No. 48) is ripe for decision.

## II. Discussion

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict for the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Yet the "mere existence of a scintilla of evidence in support of the [opposing party's] position" cannot defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest on the mere allegations or denials of its pleading but must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting

4

and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and affirmatively show the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### B. Plaintiff's Untimely Expert Disclosure

Allstate argues that it is entitled to summary judgment on Plaintiff's claims for breach of contract (Count I) and failure to settle claims in good faith in violation of Md. Code, Cts. & Jud. Proc. § 3-1701 (Count II). ECF No. 48. It contends that because Plaintiff failed to designate an expert, he cannot prove the cause of the damage to his Property, nor can he prove the cost and necessity of any repairs beyond what Allstate has paid to date. And because Plaintiff cannot prove a breach of contract, Allstate argues, Plaintiff cannot prevail on his claim that Allstate's adjustment of his claim lacked good faith.

Plaintiff's expert disclosures under Rule 26(a)(2) were due by October 7, 2023. ECF No. 26. Plaintiff did not make his expert disclosures by this deadline. ECF No. 48-1 at 6. In response to Allstate's interrogatories asking Plaintiff to "provide a complete statement of the [expert] opinions to be expressed and basis and reasons," Plaintiff stated:

> Defendant is in possession of the Proof of Loss and attachments thereto submitted by Semper Fi Public Adjusters. Plaintiff reserves the right to retain an expert in claims adjusting, estimating and construction to perform an inspection of the premises and produce a written report of his findings and conclusions. This Answer will be supplemented as discovery continues.

ECF No. 48-1 at 6. According to Allstate, Plaintiff never supplemented his answers to the interrogatories about his experts, and he never provided additional expert opinions. *Id.*

A copy of the "Proof of Loss" referenced in Plaintiff's answer to the interrogatories is filed at ECF No. 48-13. The document appears to be an estimate prepared by Joseph Kriner of Semper

5

Fi regarding the costs to repair the Property's roof. It does not explain how the estimate was reached or what factual bases were relied upon in making the estimate.

Rule 26(a)(2) governs the disclosure of expert opinions. It provides, in pertinent part:

[A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

[ ] Unless otherwise stipulated or order by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

    (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;
    (ii)    the data or other information considered by the witness in forming them;
    (iii)    any exhibits that will be used to summarize or support them;
    (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;
    (v)    a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
    (vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2).

"The purpose of Rule 26(a) is to allow litigants to adequately prepare their cases for trial and to avoid unfair surprise." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017) (internal quotation marks and citation omitted). The Fourth Circuit has explained the importance of timely Rule 26 disclosures:

Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case. For this reason, [w]e give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).

6

*Carr v. Deeds*, 453 F.3d 593, 604 (4th Cir. 2006), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *see also Jones v. Nationwide Mut. Fire Ins. Co.*, No. DKC-23-2340, 2024 WL 4534510, at *5 (D. Md. Oct. 21, 2024).

Plaintiff's expert designation does not satisfy the requirements of Rule 26(a)(2). Plaintiff has not disclosed any expert reports. The conclusory "Proof of Loss" submitted by Mr. Kriner on behalf of Semper Fi does not come close to satisfying the disclosure requirements of Rule 26(a)(2)(B). And Plaintiff's other vague disclosures about the nature of his expert's opinions are plainly insufficient.

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Fourth Circuit has held that district courts have broad discretion and should consider the following five factors when determining whether the failure to comply with Rule 26(a) is substantially justified or harmless:

> (1) [T]he surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). "The first four factors 'relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception.'" *Vedula v. Becerra*, No. TDC-18-0386, 2021 WL 8316263, at *1 (D. Md. June 23, 2021) (quoting *Bresler*, 855 F.3d at 190).

Plaintiff has not presented any information as to why he failed to comply with Rule 26's expert disclosure requirements. As to the first factor, Allstate would be unfairly surprised if

Plaintiff were to be permitted to rely on expert evidence. Plaintiff argues that Allstate has not suffered prejudice, but this argument is unpersuasive. Allstate is entitled to know the expert opinions on which Plaintiff will rely. Because Plaintiff has not disclosed any expert opinions in compliance with the rules, Allstate is left to guess on the nature of Plaintiff's expert opinions, upon what they are based, and how they were reached. As to the second factor, there is no ability to cure the surprise. Discovery is long closed and the case is pending decision on summary judgment. The third factor carries no weight because trial has not yet been scheduled. The same is true for the fourth factor because the Court cannot evaluate the importance of Plaintiff's expert evidence because no such evidence has ever been disclosed. The fifth factor cuts against Plaintiff because he has offered no explanation, beyond minimization, for his failure to disclose under Rule 26(a).

Considering all of the relevant factors, the Court finds that Plaintiff's failure to disclose his experts was not substantially justified or harmless. Accordingly, Plaintiff will not be permitted to introduce expert evidence at summary judgment or trial.

      **C.**    **Plaintiff Cannot Prove His Breach of Contract Claim Without Expert Testimony**

In Count I, Plaintiff claims that Allstate is liable for breach of contract for failing to pay the compensation owed to him under the Policy for damage caused to the Property by the February 2020 storm. ECF No. 1 ¶¶ 29-36. "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."[1] *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001); *Parkway 1046, LLC v.*

---

[1] "A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits." *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013). For contract claims, "Maryland applies the law of the state in which the contract was formed . . . unless the parties to the contract agreed to be bound by the law of another state." *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 961 (D. Md. 2019). Here, both parties have applied Maryland law in making their arguments, and the Court will do the same throughout

*U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (explaining that under Maryland law, the elements of a claim for breach of contract are "contractual obligation, breach, and damages"). When the contract at issue is an insurance contract, the plaintiff-insured bears the burden of proving entitlement to insurance benefits. *Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 512 (D. Md. 2019); *see Pryszmont v. Allstate Vehicle & Prop. Ins. Co.*, No. JMC-22-2792, 2024 WL 3090384, at *4 (D. Md. June 21, 2024) (collecting cases).

It is undisputed that the Policy covers damage to the Property resulting from the February 2020 storm. *See* ECF No. 48-2. Allstate argues that, without expert testimony, Plaintiff cannot prove that any damages beyond those for which Allstate has already paid fall within the Policy's coverage. Accordingly, Allstate argues that it is entitled to judgment as a matter of law.

Plaintiff argues that it would be unfair to decide summary judgment now because "discovery is ongoing." ECF No. 53 at 4. But discovery is closed, and it was closed when Plaintiff's brief was filed. *See* ECF Nos. 26, 34 & 38. In any event, Plaintiff has not moved for relief under Rule 56(d), nor has Plaintiff submitted the requisite proof that Plaintiff "cannot present facts essential to justify [his] opposition."[2] Fed. R. Civ. P. 56(d).

---

this opinion. *Bank of La. v. Marriott Int'l, Inc.*, 438 F. Supp. 3d 433, 443 (D. Md. 2020) ("Courts applying Maryland's choice of law rules only use Maryland law to evaluate substantive law claims as a default when both parties only cite Maryland law in their briefing.") (citation omitted).

[2] Plaintiff argues that issuing a summary judgment decision would be unfair because three "key issues" remain to be completed in discovery: Plaintiff's deposition, the deposition of Plaintiff's public adjuster, and the property inspection. Notably, it was Allstate who requested each of these pieces of discovery, and it was Plaintiff who thwarted Allstate's efforts. Plaintiff's frequent travel does not excuse his unavailability for a deposition in the very case he filed. Nor does a summer vacation schedule. The Court acknowledges that Plaintiff's public adjuster was imprisoned for a period, and that the public adjuster is facing serious criminal charges in Maryland state court. But the Court will not put this case on standby to wait for the public adjuster's criminal case to be resolved. As explained below, Allstate has demonstrated that it is entitled to summary judgment. There is no reason to delay entering judgment in this case.

Under Rule 104(a) of the Federal Rules of Evidence, the Court must determine preliminary questions conerning the qualification of a person to be a witness and the admissibility of evidence, including the admissibility of expert testimony under Fed. R. Evid. 702. "With regard to expert testimony, it is well settled that '[t]he party seeking admission of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence.'" *Maryland v. Dent*, No. ELH-18-360, 2019 WL 1795531, at *1 (D. Md. Apr. 23, 2019) (quoting *Fireman's Fund Ins. v. Tecumseh Prods. Co.*, 767 F. Supp. 2d 549, 553 (D. Md. 2011)).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"Expert testimony is admissible under Rule 702, then, if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) (citing *Daubert*, 509 U.S. at 592).

> The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable—that is, whether it is supported by adequate validation to render it trustworthy. The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue. Thus, an expert's testimony is admissible under Rule 702 if it rests on a reliable foundation and is relevant.

*Id.* at 260-61 (internal citations and quotation marks omitted). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (holding that the *Daubert* standard also applies "to the testimony of . . . other experts who are not scientists").

"Expert testimony is required when the subject matter is so particularly related to some science or profession that it is beyond the ken of the average layman." *Pryszmont*, 2024 WL 3090384, at *4 (quoting *Adams v. NVR Homes, Inc.*, 142 F. Supp. 2d 649, 654 (D. Md. 2001)). For this reason, courts "frequently hold that lay witnesses cannot testify regarding causation where determining the cause of a particular incident or occurrence is beyond common experience." *Id.* (collecting cases). On this issue, the Maryland Supreme Court has held that "the determination of the amount of property damage, to ascertain whether it falls within policy coverage, is quite likely a matter for expert testimony." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 355 Md. 566, 588 (1999); *see also Harford Cnty. v. Harford Mut. Ins. Co.*, 327 Md. 418, 436 (1992). And concerning repair cost estimates in breach of insurance contract cases, the "overwhelming majority of federal courts" have held that expert testimony must be submitted to support such evidence. *Pryszmont*, 2024 WL 3090384, at *6 (collecting cases).

A lay witness cannot testify about Plaintiff's estimated repair costs in this case. The methods of repairing the Property's roof and the costs involved in such repair, are not common knowledge. The "Proof of Loss" statement produced by Plaintiff in discovery is not a proper expert opinion. Expert testimony is required to prove any damages that Plaintiff incurred beyond those for which Allstate has already paid.

Because Plaintiff will not be permitted to offer expert testimony, he cannot prove any damages beyond what Allstate has already paid. Without proof of damages, Plaintiff cannot prevail

on his claim for breach of contract. Allstate is entitled to summary judgment on Plaintiff's breach of contract claim.[3]

### D.     Allstate Did Not Breach the Contract

Alternatively, the Court finds that Allstate did not breach its contract with Plaintiff. Because Plaintiff purchased the SRR Endorsement, Allstate was required to pay up to $20,000 toward replacing undamaged roofing materials if the original roofing material is no longer available. *See supra*; ECF No. 48-2 at 5, 8. Allstate paid Plaintiff $20,000, which is the limit of its liability under the SRR Endorsement. The SRR Endorsement provides that once the limit of liability is exhausted, no further amounts will be available. Because Allstate paid the maximum available to Plaintiff under the SRR Endorsement, Allstate has complied with its contractual obligations. Allstate has demonstrated that it is entitled to summary judgment on Count I on this alternative basis.

The Court rejects Plaintiff's argument to the contrary. The only coverage available to Plaintiff under the Policy for the damages claimed in the Complaint is through the SRR Endorsement. There is no ambiguity in the Policy or the SRR Endorsement. And there is no doctrine of "reasonable expectations" under Maryland contract law, as Plaintiff suggests. The contract terms at issue in this case are unambiguous. Plaintiff's circular and nonsensical argument

---

[3] Given the Court's ruling on Allstate's Motion for Summary Judgment, Plaintiff's Motion to Compel Appraisal and Stay Litigation Pending Appraisal ("Motion to Compel Appraisal") (ECF No. 40) is moot. Alternatively, the Motion to Compel Appraisal is denied because Plaintiff has waived his right to appraisal through his conduct in this litigation. *See Blitz v. USAA Gen. Indem. Co.*, No. RDB-24-1070, 2024 WL 4815980, at *4-6 (D. Md. Nov. 18, 2024) (finding that a litigant's delay and substantial litigation of a case before attempting to invoke appraisal indicated an intent to waive their contractual right to appraisal). The motion to strike at ECF No. 43 is denied as moot.

that the Policy somehow provides additional coverage—without citation to any particular language in the Policy—is wholly unpersuasive.

### E. Plaintiff Cannot Prove His Lack of Good Faith Claim

In Count II, Plaintiff claims that Allstate is liable for failing to act in good faith in handling his claims under the Policy. ECF No. 1 ¶¶ 37-48. "Maryland provides a special cause of action for lack of good faith by a property, casualty, or individual disability insurer in handling claims under insurance policies issued, sold, or delivered in Maryland." *Barry v. Nationwide Mut. Ins. Co.*, 298 F. Supp. 3d 826, 829-30 (D. Md. 2018) (citing Md. Code, Cts. & Jud. Proc. § 3–1701(b)).

To prevail on Count II, Plaintiff must prove that Allstate did not act in good faith when it handled his insurance claim. The statute defines "good faith" as "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." Md. Code, Cts. & Jud. Proc. § 3-1701(a)(4).

Courts apply "a few basic principles" when considering lack of good faith claims. *Barry*, 298 F. Supp. 3d at 830. First, the standard of good faith is judged under the "totality of the circumstances," including the following factors:

> [(1)] efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; [(2)] the substance of the coverage dispute or the weight of legal authority on the coverage issue; [and] [(3)] the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage.

*Id.*

Second, delay in handling a claim generally cannot serve as the sole basis for a lack of good faith claim. *Id.* While delay in handling a claim *may* serve as the sole basis for such a claim when the insurer does not act within the time period specified by statute or regulation for investigation of a claim, such delay "is not per se lack of good faith under the statute." *Id.*

Third, an allegation that an insurer has failed to pay policy benefits cannot serve as the sole basis for a lack of good faith claim. *Id.* This is because "[i]t is well-settled under Maryland law that an insured claiming that an insurer has failed to pay policy benefits may only pursue contract remedies." *Id.* (quoting *Bierman Fam. Farm, LLC v. United Farm Fam. Ins. Co.*, 265 F. Supp. 3d 633, 38 (D. Md. 2017) (collecting cases)). "An allegation of breach of contract is therefore a necessary but not sufficient condition for a lack of good faith claim." *Barry*, 298 F. Supp. 3d at 830. In order to prevail on a lack of good faith claim, "[a]n insured must prove that an insurer breached the insurance contract," but must also prove that the insurer also acted without good faith in handling the claim. *Id.*; *Pryszmont*, 2024 WL 3090384, at *7 (same).

Plaintiff's claim for lack of good faith fails because Plaintiff has not proven that Allstate breached the contract. *See Barry*, 298 F. Supp. 3d at 830. Without proof that Allstate breached the contract, Plaintiff cannot prevail on his claim in Count II. *See, e.g.*, *Epp v. State Farm Fire and Cas. Co.*, No. BAH-23-0595, 2025 WL 360488, at *12 (D. Md. Jan. 30, 2025) ("Given that the Court has disposed of Plaintiff's breach of contract claims . . . , these allegations cannot sustain a claim for failure to act in good faith."). Accordingly, Allstate is entitled to summary judgment on this claim.

### F.     Plaintiff's Failure to Prosecute and Citation of Fictitious Caselaw

During this case, the Court ordered Plaintiff to show cause why the Complaint should not be dismissed for failure to prosecute. ECF No. 39. Plaintiff responded to the show cause order as directed. ECF No. 42. As explained above, the Court will resolve this case on the merits rather than on Plaintiff's counsel's failure to comply with the Court's rules and deadlines. The Court thus does not consider whether Plaintiff's Complaint should be dismissed for failure to prosecute.

Nevertheless, the Court has serious concerns about the conduct of Plaintiff's counsel in this case. In his opposition brief, Plaintiff's counsel cites three cases that do not exist. ECF No. 53 at 7. Allstate pointed out this problem in its reply brief (ECF No. 54 at 3-4), but Plaintiff's counsel never sought to rectify the error until the Court ordered Plaintiff to produce copies of the cases. ECF No. 55. In response to the Court's order, Plaintiff's counsel admitted that the case citations were fabricated. But, to the Court's astonishment, counsel offered no explanation for how the cases came to be included in his brief. ECF No. 56.

Plaintiff's counsel's opposition brief has other glaring troubles. In another part of the brief, Plaintiff's counsel accuses Allstate of misstating facts and "veer[ing] without clear purpose into deposition excerpts, while framing the facts of the matter from within those cherry-picked excerpts," and "lodg[ing] a defense unrelated to Plaintiff's case theory." ECF No. 53 at 2. But Allstate does not cite any deposition excerpts in its Motion, let alone "cherry-picked excerpts." And Allstate does not make any arguments unrelated to Plaintiff's case theory. All of Allstate's arguments are directed at proving that it is entitled to judgment on Plaintiff's claims in Counts I and II of the Complaint. The Court notes that Plaintiff's lead counsel is listed as the attorney in over 60 cases that were filed between 2022 and 2024. It is unclear whether Plaintiff's counsel made similar misrepresentations to the Court in these other cases. Many of the cases are still open.

The Court will not allow its concerns about Plaintiff's counsel's conduct further delay the resolution of this case. Instead, the Court will take steps for the appropriate authorities to determine whether the conduct of Plaintiff's counsel violated any of the Court's rules or the Maryland Attorneys' Rules of Professional Conduct.

## III. Conclusion

For these reasons, Allstate's Motion for Summary Judgment (ECF No. 48) is **GRANTED** and Plaintiff's Motion to Compel Appraisal (ECF No. 34) is **DENIED AS MOOT**. A separate Order will accompany this Memorandum Opinion.


Date: February 19, 2025                         /s/
                                        Timothy J. Sullivan
                                        Chief United States Magistrate Judge